Entered on Docket
June 12, 2006
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED
MAY 15 2006
HAROLD S. MARENUS, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>JAMES PAULETT CHARLTON,<br>              Debtor. | BAP No.   NC-05-1298-RyBK<br>Bk. No.   04-32400 |
| CONSUELO CHARLTON,<br>              Appellant,<br>v.<br>E. LYNN SCHOENMANN, Chapter 11 Trustee; JAMES PAULETT CHARLTON,<br>              Appellees. | M E M O R A N D U M[1] |

Argued and Submitted on March 24, 2006
at San Francisco, California

Filed - May 15, 2006

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Thomas E. Carlson, Bankruptcy Judge, Presiding

Before: RYAN,[2] BRANDT AND KLEIN, Bankruptcy Judges

---

[1] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except when relevant under the doctrines of law of the case, res judicata or collateral estoppel. See 9th Cir. BAP Rule 8013-1.

[2] Honorable John E. Ryan, Bankruptcy Judge for the Central District of California, sitting by designation.

## I. INTRODUCTION

James Paulett Charlton ("Debtor") requested authority to sell the Marc Chagall painting *Le Peintre et L'Horloge* or *the Painter and the Clock* (the "Chagall"). Consuelo Charlton ("Consuelo"), Debtor's ex-wife, objected to the extent Debtor sought to use the proceeds from the sale, arguing that she had an interest in the Chagall. Nevertheless, the parties stipulated to the sale of the Chagall, and the court entered an order that the proceeds would be held in escrow until the ownership issue was resolved.

Later, Debtor filed a motion to authorize the release of the sale proceeds to pay certain estate administrative expenses (the "Motion"). Debtor argued that Consuelo's interest in the Chagall proceeds was inchoate and unvested. Consuelo again objected, arguing that she had a vested interest in all of the "marital property," including the Chagall proceeds, based on the filing of a divorce complaint. After a hearing, the court granted the Motion, holding that Consuelo did not have a vested interest in the Chagall and that her unvested, inchoate property interest was subject to §§ 544(a)(1) and (3) of the Bankruptcy Code.[3] Consuelo timely appealed.

We VACATE and REMAND.

---

[3] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code (the "Code"), 11 U.S.C. §§ 101-1330, prior to its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "Act"), Pub. L. 109-8, 119 Stat. 23, as the case from which this appeal arose was filed before the Act's effective date (October 17, 2005), and to the Federal Rules of Bankruptcy Procedure (the "Rules"), Rules 1001-9036.

2

## II. STATEMENT OF FACTS

On May 29, 1993, Consuelo and Debtor married. During the marriage, the Chagall was acquired. The parties do not dispute that the Chagall was Debtor's separate property. Debtor and Consuelo separated during February 1999. In May 2003, Consuelo filed for divorce in Utah. On December 18, 2003, the Utah court granted a bifurcated decree of divorce leaving for further determination the equitable distribution of the marital property.

On August 24, 2004, Debtor filed a voluntary chapter 11 petition. The Chagall was listed on Debtor's Schedule B. On October 25, 2004, Debtor filed a motion to sell the Chagall and another painting outside the ordinary course of business (the "Sale Motion"). Debtor argued that the sale of the paintings was necessary to pay for the costs of administering the estate. Consuelo opposed the sale to the extent Debtor sought to use the proceeds, arguing that she had an interest in the Chagall because under Utah law she would likely receive at least one-half of the marital estate. In addition, Consuelo argued that the proposed purchase price was not representative of the Chagall's actual value.

At the hearing on the Sale Motion, Consuelo withdrew her objection, provided that her interest attached to the sale proceeds. By order signed November 19, 2004, the bankruptcy court authorized the sale of the Chagall free and clear of Consuelo's alleged interest with the proceeds to be held in escrow until the ownership issues were resolved.

The Chagall was sold for $200,000. On January 18, 2005, Debtor filed the Motion, arguing that Consuelo's interest in the

3

Chagall proceeds was inchoate and unvested, thereby leaving her with an unsecured claim upon the bankruptcy filing. Consuelo responded that she had a vested interest in the Chagall proceeds because of the divorce decree and her interest was not estate property. Therefore, she contended that her interest in the proceeds could not be used to pay administrative expenses.

After a hearing, the court concluded that, as of the petition date, Consuelo had an unvested, inchoate interest in the Chagall subject to the trustee's avoiding powers under §§ 544(a)(1) and (3). Accordingly, the court granted the Motion, and Debtor was authorized to use the Chagall proceeds to pay certain administrative expenses totaling $46,250 and any other administrative expenses that may be necessary to preserve the estate or upon further court order. Consuelo timely appealed.

On April 1, 2005, the court ordered the appointment of E. Lynn Schoenmann as chapter 11 trustee ("Trustee").

Two weeks earlier, on March 14, 2005, the bankruptcy court approved a stipulation granting relief from stay for the divorce court to equitably distribute the property. On March 7, 2006, Consuelo filed with the panel a copy of the Utah state court findings of fact and conclusions of law issued on February 27, 2006, fixing the parties' interests in the marital property (the "Decision"). On March 24, 2006, the parties again brought the Decision to our attention during oral argument.

### III. Issues

1. Whether the bankruptcy court erred in its determination that, as of the petition date, Consuelo's marital property

4

interest in the Chagall had not vested under Utah law.

2. Whether Consuelo's interest in the Chagall was cut off by the Trustee's avoiding powers under §§ 544(a)(1) and (3).

## IV. Jurisdiction

The bankruptcy court had jurisdiction under 28 U.S.C. § 1334 and 28 U.S.C. §§ 157(a) and (b). We have jurisdiction under 28 U.S.C. §§ 158(c) and (d).

## V. Standard of Review

The facts are undisputed. The extent and nature of property of the estate is a question of law. We review the bankruptcy court's conclusions of law and interpretation of the Code *de novo*. Bunyan v. United States (In re Bunyan), 354 F.3d 1149, 1150 (9th Cir. 2004); Tanzi v. Comerica Bank - California (In re Tanzi), 297 B.R. 607, 610 (9th Cir. BAP 2003).

## VI. DISCUSSION

Generally, "an appellate court should base its decision on the facts as they existed at the time the trial court made its decision." Frankfurth v. Cummins (In re Cummins), 20 B.R. 652, 653 (9th Cir. BAP 1982). However, an appellate court may, in extraordinary circumstances, take judicial notice of developments in a case that occur while the appeal is pending. Id.; see also Bryant v. Carleson, 444 F.2d 353, 357 (9th Cir. 1971) (taking judicial notice of post-appeal developments affecting the issues presented on appeal); and Alexander v. Jensen-Carter (In re Alexander), 239 B.R. 911, 913 (8th Cir. BAP 1999).

5

In the Decision, the Utah court, acting under the color of relief from stay by the bankruptcy court, determined the property rights of the parties as of December 18, 2003, the date of the bifurcated divorce decree.[4] The state court ordered that certain property, including any art titled in Debtor's name, was in constructive trust for Consuelo's benefit.[5]

Therefore, the state court awarded the Chagall to Consuelo *nunc pro tunc* effective December 18, 2003.[6] Because this potentially affected the analysis of the parties' ownership interests in the Chagall as of the petition date, we take judicial notice of the Findings.

Where "circumstances have changed between the ruling below and the decision on appeal, the preferred procedure is to remand to give the [trial] court an opportunity to pass on the changed circumstances." Korn v. Franchard Corp., 456 F.2d 1206, 1208 (2d Cir. 1972); see also Warm Springs Dam Task Force v. Gribble, 621 F.2d 1017, 1026 (9th Cir. 1980); and Hadley v. Victory Constr. Co., Inc. (In Re Victory Constr.), 37 B.R. 222, 227 (9th Cir. BAP

---

[4] The court reasoned that this was the latest date available that would allow it to establish Debtor's legal or equitable interests as of the petition date. While the court recognized that, in the end, only the bankruptcy court could determine what property still existed, the court distributed the property as if it existed as of December 18, 2003.

[5] The court stated that Consuelo requested the declaration of a constructive trust because she believed that a constructive trust would defeat the trustee's strong-arm powers under §§ 544(a)(1) & (3).

[6] The parties do not dispute that the Chagall was Debtor's separate property. Therefore, the Chagall is presumably "art titled in [Debtor's] name" that Debtor is to hold in constructive trust for Consuelo's benefit.

6

Case: 04-32400   Doc# 391   Filed: 05/15/06   Entered: 06/12/06 16:22:34   Page 6 of 10

1984). We will follow this practice here.

The nature of Consuelo's interest in the Chagall as of the petition date based on the commencement of divorce proceedings under Utah law was critical to the bankruptcy court's determination that the proceeds from the Chagall could be used to pay estate administrative expenses. The Decision appears to have changed the basis for evaluating Consuelo's interest. The Utah court made a distinction between those assets that Consuelo received via equitable division and those subject to a constructive trust, indicating that the latter may defeat the trustee's strong-arm powers. That premise may be mistaken. See Chbat v. Tleel (In re Tleel), 876 F.2d. 769, 772 (9th Cir. 1989); see also In re Roman Catholic Archbishop of Portland in Oregon, 335 B.R. 868, 878 (Bankr. D. Or. 2005). However, because the Decision was issued after the briefing of this appeal neither the bankruptcy court nor we have the benefit of fully developed arguments on this issue.

Under the circumstances, the Decision is important in fixing Consuelo's pre-petition interest in the Chagall. Therefore, justice is better served by remanding the case for the bankruptcy court to consider the effect of the Decision and the resulting supplemental divorce decree, if any,[7] on Consuelo's interest in the proceeds from the sale of the Chagall and the use of those proceeds to pay administrative claims of the bankruptcy estate.

---

[7] The Utah court ordered that counsel for Consuelo prepare a supplemental divorce decree consistent with the Findings. Nothing in the bankruptcy court's docket, nor anything filed in supplementation of the record on appeal, indicates whether a supplemental decree has been entered.

Case: 04-32400    Doc# 391    Filed: 05/15/06    Entered: 06/12/06 16:22:34    Page 7 of 10

## VII. Conclusion

In sum, while this appeal was pending, the Decision issued addressing Consuelo's ownership interest in the Chagall as of December 18, 2003. The Decision opens questions (about which we intimate no views) regarding its effect on the bankruptcy case that deserve more careful consideration than we can afford within the confines of the appellate record. Therefore, justice is better served by remanding this matter to provide the bankruptcy court an opportunity to determine the effect of the Decision on Consuelo's interest in the Chagall proceeds and any use of those proceeds to pay administrative claims.

We VACATE and REMAND.

```
            U.S. Bankruptcy Appellate Panel
                  of the Ninth Circuit
      125 South Grand Avenue, Pasadena, California 91105
         Appeals from Central California   (626) 229-7220
         Appeals from all other Districts  (626) 229-7225
```

                       NOTICE OF ENTRY OF JUDGMENT


BAP No. NC-05-1298-RyBK


RE:  JAMES PAULETT CHARLTON


A separate Judgment was entered in this case on _____5/15/06_____.


BILL OF COSTS:

Bankruptcy Rule 8014 provides that costs on appeal shall be taxed by the
Clerk of the Bankruptcy Court.  Cost bills should be filed with the Clerk
of the Bankruptcy Court from which the appeal was taken.
9th Cir. BAP Rule 8014-1


ISSUANCE OF THE MANDATE:

The mandate, a certified copy of the judgment sent to the Clerk of
the Bankruptcy Court from which the appeal was taken, will be issued
7 days after the expiration of the time for filing a petition for
rehearing unless such a petition is filed or the time is shortened or
enlarged by order.  See Federal Rule of Appellate Procedure 41.


APPEAL TO COURT OF APPEALS:

An appeal to the Ninth Circuit Court of Appeals is initiated by
filing a notice of appeal with the Clerk of this Panel.  The Notice
of Appeal should be accompanied by payment of the $255 filing fee
(effective November 1, 2003) and a copy of the order or decision on
appeal. Checks may be made payable to the U.S. Court of Appeals for
the Ninth Circuit.  See Federal Rules of Appellate Procedure 6 and the
corresponding Rules of the United States Court of Appeals for the Ninth
Circuit for specific time requirements.

CERTIFICATE OF MAILING
------------------------------------

The undersigned, deputy clerk of the U.S. Bankruptcy Appellate Panel of the Ninth Circuit, hereby certifies that a copy of the document on which this certificate appears was mailed this date to all parties of record to this appeal.

By: Edwina Clay

Deputy Clerk: May 15, 2006