Entered on Docket
June 02, 2008
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



**Signed and Filed: May 30, 2008**

_____
**THOMAS E. CARLSON**
**U.S. Bankruptcy Judge**
_____

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re ) Case No. 04-32400 TEC
)
JAMES PAULETT CHARLTON, ) Chapter 7
)
Debtor. )

**MEMORANDUM RE TRUSTEE'S MOTION FOR SUMMARY JUDGMENT FOLLOWING REMAND FROM BANKRUPTCY APPELLATE PANEL**

For the reasons stated below, I determine that the trustee's rights under her strong-arm powers are superior to the rights of Debtor's former spouse under the retroactive constructive trust and the retroactive property division imposed by a Utah state court.

**FACTS**

This court allowed the bankruptcy estate to retain the proceeds from the post-petition sale of a Marc Chagall painting (the Painting). Debtor (hereinafter James) and his former wife (hereinafter Consuelo) stipulated that, prior to their divorce, the Painting had been held by James as his separate property. Consuelo

filed a petition for divorce in Utah before James filed his bankruptcy petition, but the Utah state court made no division of property before the bankruptcy filing.  Consuelo argued that under Utah law she became vested in an undivided interest in the Painting upon the filing of the divorce petition, citing In re White, 212 B.R. 979 (10th Cir. BAP 1997).

This court held that, under Utah law, Consuelo had only an inchoate interest in the Painting unless and until the state court entered an order awarding her that property.  See Hamilton v. Hamilton, 562 P.2d 235, 237 (Utah 1977).  The White case does not govern, because it involved a Wyoming statute providing that, upon the filing of a divorce petition, the spouse is vested with an undivided interest in all property acquired during the marriage. Because Utah had no such statute, and because the Utah state court had not entered an order dividing marital property before James' bankruptcy petition, the bankruptcy estate prevailed against Consuelo's inchoate claim under the trustee's strong-arm powers. See 11 U.S.C. § 544.

This court later approved a stipulation lifting the automatic stay to permit the Utah court to decide the issues that remained unresolved under the bifurcated decree of divorce: child custody, support, and division of property.  The Utah court commenced a trial regarding these issues on November 29, 2005, issued written findings and conclusions on February 27, 2006, and entered an order on August 14, 2006.

The state court awarded the Painting to Consuelo, and imposed a constructive trust on the Painting for her benefit.  The state court also made this award retroactive to the date of the

bifurcated decree, which had dissolved the marriage but had reserved for later decision all issues re property division. The date of the bifurcated decree (December 18, 2003) was before the date of James' bankruptcy petition (August 24, 2004).

The state court found that none of the property held by either spouse was separate property. Although James had inherited property from his grandmother and two great aunts, he had invested that property in various business ventures, where it became co-mingled with property acquired during the marriage. See Request to Take Judicial Notice in Support of Trustee's Motion for Summary Judgment ("RJN"), Exh. 1 at pp. 12-14. Artwork acquired from the proceeds of sale of these business interests could not be traced to property James inherited, and was thus marital property, irrespective of how title was held. Id.

The state court found that James was responsible for a decline in the value of marital assets, but that his conduct did not amount to fraud. James was a software engineer at the time he married Consuelo in 1993. Id. at p. 11. During the marriage, he founded various businesses, some of which were very successful and were sold for millions of dollars. Id. at pp. 15, 26. Virtually all of this value had been lost By the time of the bifurcated decree in December 2003. Regarding this loss, the court noted:

> [T]he ineluctable finding is that respondent possessed, then lost, a fortune. The court finds; however, that the steps that led inexorably to the losses were not the result of malice, and certainly not actions tailored exclusively, or even primarily, to deprive petitioner of any benefit from the assets. . . . In very brief summary, the losses result from mistakes of a newly-rich but unsophisticated business man, who invested badly, trusted others unwisely, and then found his mistakes compounded by the plunging stock market and technology collapse of 2000 and thereafter. As regrettable as these circumstances are, petitioner has not carried her burden

>     of showing that most of the cumulative and devastating
>     errors amounted to dissipation.

RJN, Exh. 1 at p. 17: ¶¶ 53, 55.

More specifically, the state court found that James was responsible for the loss of marital assets after the parties' separation in March 1999. The court found that James had expended marital assets on a lavish lifestyle and that in doing so he breached his fiduciary duty to preserve marital assets for the use of the marital estate, but that this breach of duty did not amount to fraud.

>     Respondent breached the promise, not for the most part by
>     dissipation as that term is usually defined, and not by
>     fraud, but respondent allowed himself to get into a
>     position where he could not keep his promises and meet
>     his obligations in the marital relationship.

Id. at p. 31: ¶ 33.

Although the state-court order awards Consuelo the Painting, its findings and conclusions do not support the award of that particular property. Rather, they indicate that the court intended to award Consuelo an interest only in those artworks in her possession on the date of trial, and that the constructive trust was intended to protect art in Consuelo's possession but to which James held title.

>     This court specifically focused on art work in the
>     possession of petitioner at the date of trial. . . .
>     *Regarding the foregoing property*, the court concludes
>     that respondent held the entire equity of the Woodside
>     house, any art titled in his name, and half of the Parc
>     Royal judgment in constructive trust for the benefit of
>     petitioner. . . . The art work and personal property that
>     is not at this time controlled by the Bankruptcy Trustee,
>     but is in the possession of petitioner, represents her
>     equitable share of the marital estate. In fact, it
>     represents a value that is likely much lower than her
>     equitable share, but for respondent's mismanagement, but
>     it is essentially the only property remaining outside the
>     Bankruptcy estate that may be awarded to her pursuant to

>     this court's equitable powers.  If any of the art work is
>     titled in respondent's name, a constructive trust is
>     imposed on that art for petitioner's benefit.

Id., Exh. 1 at pp. 30-31: ¶¶ 31, 32, 35 (emphasis added). The state court was aware that the trustee had sold the Painting in November 2004 and had possession of the proceeds on the date the state-court trial commenced (November 26, 2005). Id. at p. 3.

While the state-court action was proceeding, Consuelo appealed from this court's order upholding the bankruptcy estate's claim to the Painting. That appeal went to the Ninth Circuit Bankruptcy Appellate Panel (BAP). The Utah state court issued its decision before the BAP heard Consuelo's appeal. Because the respective rights of Consuelo and the bankruptcy estate might be affected by the state-court order, and because this court had not had an opportunity to consider the effect of that order, the BAP remanded the matter to allow this court to consider the effect of the state-court order.

**QUESTION PRESENTED**

Does the post-petition imposition of a constructive trust on the Painting, or the post-petition division of property awarding the Painting to Consuelo, made via an order purporting to be retroactive to a date before the filing of the bankruptcy petition, remove the Painting from the bankruptcy estate or otherwise defeat the trustee's interest in the Painting under her strong-arm powers?

**DISCUSSION**

I.

We must first examine Consuelo's property rights under Utah law. Utah is not a community property state. Under Utah law, property traceable to assets owned by one spouse before the

marriage or to assets inherited by a spouse during the marriage, are separate property. Bradford v. Bradford, 993 P.2d 887, 892-93 (Utah App. 1999) (citing Utah Code Ann. § 30-2-3). Property acquired during marriage that is not traceable to separate property is marital property. Id. Upon divorce, the state court is authorized to divide the marital property equitably between the spouses. Utah Code Ann. § 30-3-5. In appropriate circumstances, the court may award the separate property of one spouse to the other spouse. E.g., Elman v. Elman, 45 P.3d 176, 180-82 (Utah App. 2002); Thomas v. Thomas, 987 P.2d 603, 610-11 (Utah. App. 1999).

Although which spouse holds title does not determine whether property is marital property, how title to marital property is held is important in dealings with third parties. A spouse who is not on title does not have a present, vested interest in marital property until the court awards such property to that spouse. Hamilton, supra, 562 P.2d at 236-37. Thus, after the filing of a petition for divorce but before the state court enters an order dividing marital property, the title-holding spouse may convey marital property to a third party free of the inchoate marital property interest of the non-title-holding spouse. Id.

Utah courts are permitted to enter, upon notice and a finding of good cause, nunc pro tunc orders in matters "relating to marriage, divorce, legal separation or annulment of marriage". Utah Code Ann. § 30-4a-1. But this court has found no published Utah decision suggesting that a nunc pro tunc division of marital property overrides Hamilton and is effective against a bona fide

purchaser or against a judgment lien creditor of the title-holding spouse.[1]

II.

We must next examine the effect of constructive trust claims on the bankruptcy estate. Ninth Circuit law regarding the effect of a claim for constructive trust upon property of the bankruptcy estate and upon the trustee's "strong-arm" powers can be summarized as follows.

(1) If a constructive trust has been imposed by court order pre-petition, the constructive trust is fully effective and removes the property in question from the bankruptcy estate. Torres v. Eastlick (In re North Am. Coin & Currency), 767 F.2d 1573, 1575 (9th Cir. 1985); Airwork Corp. v. Markair Express (In re Markair Express), 172 B.R. 638, 642 (9th Cir. BAP 1994).

If the claim for constructive trust has not been granted pre-petition, the effect of the claim depends upon the validity of the claim and the grounds upon which the constructive trust is sought. Markair, supra, 172 B.R. at 641-42.

(2) If imposition of a constructive trust is warranted under state law, and *if the basis for the constructive trust is that debtor did not have a beneficial interest in the property in question as of the petition date* (because the debtor obtained the property by theft, fraud, mistake, or upon the implied or express

---

[1] No published case has applied Utah's nunc pro tunc statute to modify third party rights retroactively. One of the four cases applying Utah's statute determined that it did not apply because the action did not involve dissolution of a marriage. Whyte v. Blair, 885 P.2d 791 (Utah 1994). The three other cases each held that entry of an order nunc pro tunc was not appropriate. Behrman v. Behrman, 139 P.2d 307 (Utah App. 2006); Bagshaw v. Bagshaw, 788 P.2d 1057 (Utah App. 1990); Horne v. Horne, 737 P.2d 244 (Utah App. 1987).

understanding that the debtor held the property for another), then a constructive trust may be imposed post-petition, removing the property from the bankruptcy estate. Misui Manufacturers Bank v. Unicom Computer Corp. (In re Unicom Computer Corp.), 13 F.3d 321, 325 (9th Cir. 1994); Torres, supra, 767 F.2d at 1576; Golden Mortgage Fund #14 v. Kennedy (In re Golden Triangle Capital, Inc.), 171 B.R. 79, 82-83 (9th Cir. BAP 1994).

> Bankruptcy trustees have been held to have no interest in property acquired by fraud of bankrupts, as against the rightful owners of the property. The principle underlying this rule is that the creditors should not benefit from fraud at the expense of those who have been defrauded.

Torres, supra, 767 F.2d at 1576 (citations omitted).

(3) If the debtor was the beneficial owner of the property in question as of the petition date, and *a constructive trust is sought as a remedy for debtor's failure to fulfill some obligation*, then the claim for constructive trust pending on the petition date is subject to the trustee's strong-arm powers under section 544. Chbat v. Tleel (In re Tleel), 876 F.2d 769, 771-74, n. 7 (9th Cir. 1989); Torres, supra, 767 F.2d at 1577-78; Markair, supra, 172 B.R. at 642-43. This is so, because courts must

> act very cautiously in exercising such a relatively undefined equitable power in favor of one group of potential creditors at the expense of the other creditors, for ratable distribution among creditors is one of the strongest policies behind the bankruptcy laws.

Torres, supra, 767 F.2d at 1575.

Consuelo's claim does not come within the first category, because it is undisputed that the state court did not enter an order imposing a constructive trust pre-petition.

Consuelo's claim does not come within the second category, because the parties stipulated that prior to the filing of the divorce petition James held the Chagall painting as his separate property, and Consuelo does not contend, nor did the state court find, that James acquired that interest by theft, fraud, mistake, or upon the understanding that he actually held the painting for Consuelo.

Consuelo's claim comes within the third category, because the reasoning of the state court shows clearly that it imposed a constructive trust as a *remedy* unrelated to any claim of previous beneficial ownership. The state court did not find that Consuelo had been the beneficial owner of the painting. Rather, the state court imposed a constructive trust to help her recover an appropriate share of the couple's total property. RJN at pp. 30-31, ¶¶ 31, 32, 35.

### III.

Next, we must examine the trustee's strong-arm powers. The strong-arm powers of section 544(a)(1) give the trustee the status and power of a creditor who obtains a judgment lien against property of the debtor at the time the petition is filed. The effect of this status is governed by state law. In re Hilde, 120 F.3d 950, 952 (9th Cir. 1997).

I determine that California law governs the rights of the trustee as a judgment lien creditor in the present case. The bankruptcy petition was filed in California, and James lived in California on the petition date. The evidence suggests that the Painting was also in California and under James' control on the petition date. I note that schedule B did not specify the location

of personal property, except to indicate that certain items were in Consuelo's custody and located outside of California. The Painting was not identified as one of the items outside of California. The fact that James resided in California on the petition date, and did not list the Painting among the items of property outside of California, suggest that the Painting was within California and under James' control on the petition date. Consuelo has not suggested otherwise. The strong-arm powers of a trustee in a bankruptcy case pending in California with respect to property located in California should be determined under California law. See Restatement (Second) Conflicts § 222 (1971); Hilde, supra, 120 F.3d at 952.

Under California law, the rights of a judgment lien creditor are superior to those of a party that later obtains an order retroactively imposing a constructive trust. ChoPP Computer Corp. v. United States, 5 F.3d 1344 (9th Cir. 1993).

In ChoPP, the United States enforced a judgment against Laurins by levying upon funds in Laurins' brokerage account. The United States did so with knowledge that ChoPP had filed a state-court action against Laurins, and had obtained a preliminary injunction prohibiting Laurins from transferring funds from the brokerage account. Id. at 1345-46. ChoPP later obtained judgment against Laurins. As part of that judgment, the court retroactively imposed a constructive trust in favor of ChoPP on the funds in Laurin's brokerage account. Id. at 1346. ChoPP then brought an action against the United States, asserting that its rights to the funds in Laurin's brokerage account were superior to the rights of the United States. Id.

The Ninth Circuit held that the United States had the superior claim to the funds. First, neither the pending action nor the preliminary action gave ChoPP a present interest in the brokerage account at the time of the levy. Id. at 1347. Second, under California law, the retroactive imposition of a constructive trust was ineffective against a prior levy by a judgment creditor. Id. at 1348-50.

> ChoPP's view to the contrary, if adopted, would cause disruption that we conclude would not be countenanced by California law. If a retroactive creation of a constructive trust may defeat a prior and otherwise legal levy, one creditor may deter competitors from satisfying their judgments against a common debtor merely by initiating an action that seeks recognition of a constructive trust over the debtor's assets.

Id. at 1348. It is also worthy of note that California law expressly provides that a judgment creditor may execute upon property whose ownership is the subject of a pending action, if the property at issue, like the Painting involved here, is tangible personal property in the possession or control of the judgment debtor. Cal. Code Civ. Proc. § 700.180(a)(3).

## IV.

The state-court order retroactively dividing marital property fares no better against the trustee's strong-arm powers than the retroactive constructive trust. Consuelo cites no reason why the retroactive division of property should not be subject to the test used to determine whether the retroactive imposition of a constructive trust should be effective against the trustee's strong-arm powers. The state court's retroactive award of the Painting to Consuelo was not based upon the determination that she had been the equitable owner, or that James had obtained ownership

-11-
Case: 04-32400   Doc# 463   Filed: 05/30/08   Entered: 06/02/08 15:56:13   Page 11 of 13

from her by theft, fraud, mistake, or upon the understanding that he would hold the Painting for her benefit. Rather, the state court awarded Consuelo the Painting for a remedial purpose--to leave her with an appropriate amount of wealth. Enforcing the retroactive property division against the estate is therefore not necessary to prevent James' creditors from gaining a windfall from stolen property, but would favor one creditor over others, thereby undermining the policy of ratable distribution. See Torres, supra at 1575-76.

It is also doubtful whether the property division can be given retroactive effect against creditors under Utah law. As noted previously, this court has found no published decisions applying section 30-4a-1 to the detriment of third parties. See n.1, supra. Furthermore, the Utah statute authorizing the state court to allocate property and debts among the spouses upon divorce expressly provides that the assignment of joint debts incurred during the marriage does not alter the rights of creditors. Utah Code Ann. § 30-3-5(1)(c) (incorporating Utah Code Ann. § 15-4-6.5).

**CONCLUSION**

For the reasons stated above, I determine that the trustee's rights in the Painting (and proceeds from its sale) are superior to Consuelo's rights under the retroactive constructive trust and retroactive division of marital assets imposed by the Utah state court.

**\*\*END OF MEMORANDUM\*\***

| | |
|---|---|
| 1 | **Court Service List** |
| 2 | Thomas F. Koegel, Esq. |
|   | Folger, Levin and Kahn |
| 3 | 275 Battery St. 23rd Fl. |
|   | San Francisco, CA 94111 |
| 4 | |
|   | Louis J. Cisz, III, Esq. |
| 5 | Thelen, Reid and Priest |
|   | 101 2nd Street, Suite1800 |
| 6 | San Francisco, CA 94105-3601 |
| 7 | James P. Charlton |
|   | 2995 Woodside Rd. #432 |
| 8 | Woodside, CA 94062 |